CLARENCE E. McMANUS, Judge.
| ^Plaintiff, Barry Badeaux, filed a petition for damages and breach of contract, alleging that he and defendant, Warren Savoie, entered into a lease agreement with and option to purchase, and that defendant breached the agreement by selling the property to someone else. After trial on the merits, the court rendered judgment in favor of plaintiff, awarding damages of $19,200.00 plus interest and costs. All other relief was denied. Both parties have appealed from that judgment.
On August 11,1993, Badeaux and Savoie entered into an agreement for the lease of property. The agreement, provided by Savoie, was a typewritten rental agreement which provided for monthly rental payments of $575.00 with a reduction of $25.00 for timely payments. Savoie also included handwritten terms at the bottom of the first page that provided:
* House will be removed from the sales market during term of this lease.
*1128 * Lessee may purchase at any time. All rent applied to purchase. (10/06 + $4,000.00 Approx.)
The original term of the lease was from July 17, 1993 to August 1,1994. The lease also provided for “Automatic renewal on a month to month basis at the expiration of this contract allowing then either the Lessor or Lessee to void with a 30 day written notice.”
13Badeaux and Main took occupancy of the residence. After the expiration of the original term, no new agreement was made. They continued to make timely monthly payments to Savoie until March of 2005. On the bottom of each payment, it was noted that the payment was for “house note.” On March 16th, Badeaux received a letter notifying him to make his payments to a third party, Wilton and Courtnie Comardelle. On April 25, 2005, Badeaux sent Savoie a letter stating that he wanted to purchase the property in accordance with their lease agreement.
During that time, Badeaux discovered that Savoie had sold the property to the Comardelles. He testified that he was not given notice, nor was he provided the opportunity to exercise the option to purchase prior to the sale. At the time of the sale, Badeaux had paid in excess of $70,000.00 to Savoie. Badeaux received a notice to vacate the premises from the Comardelles in April of 2005, and was served with a Petition of Eviction on May 5, 2005.
Rachael Main testified that she cohabita-ted with plaintiff, and had done so for the previous 14 years. She resided with the plaintiff at the subject property. She stated that Savoie offered them the option of “rent to own,” and that he provided the contract that they entered into. She further testified that she and plaintiff requested that he include the addendum that the payments would finish in October of 2006, with the payment of an additional $4,000.00, and Savoie made the handwritten notation on the bottom of the contract. Thereafter, they occupied the premises and made the required monthly payments. She further testified that they stayed in the house past the 1994 term, and there was never a new agreement executed between them.
Ms. Main testified that from August of 1991 until September of 1995, they made timely monthly payments of $550.00. In September of 1995, the taxes on the property increased, and they began to pay an additional $25.00 per month for the |4tax. She also testified that she and Mr. Ba-deaux made some repairs to the property, and that Mr. Savoie also made repairs, including replacing the air conditioner and the roof. She further said that at one point, she and Badeaux changed the locks on the property. Mr. Savoie was not given a key to the new locks.
Barry Badeaux testified that he and Sa-voie discussed the possibility of a lease purchase (rent to own) and that Savoie prepared the contract of their agreement. Savoie indicated that Badeaux would take over the house payment, which would be concluded in October of 2006. Thereafter, and after making an additional payment of $4,000.00, Badeaux would own the property. Savoie wrote the notation on the first page, representing their agreement. The agreement was orally modified twice, at the request of Savoie, first to include an extra $25.00 payment toward property tax, and second to request that payment be made on the 25th of the month instead of the following 1st, so that Savoie could make his payments timely. Badeaux testified that he did not receive any written notice from Savoie prior to the sale to the Co-mardelles.
Badeaux also testified that at the time he initially entered into the agreement *1129 with Savoie, comparable properties rented for approximately $850.00, but he paid more in exchange for what he believed was an ownership option.
Mr. Savoie testified that he originally purchased the property for $54,000.00 in 1981. In 1991, he placed an ad in the paper to sell or lease the property. He stated that he requested rent of $525.00, although he admitted that other properties were renting for $800.00. He stated that Badeaux paid $550.00 monthly because he was consistently late in his payments.
He further testified that he offered to sell the property several times, but was told that Badeaux could not come up with the balance. He sold the property to the | RComardelles for $26,000.00. He further testified that the rent increase of $25.00 in 1995 was not to pay taxes, but was a penalty because Badeaux’s rent payments were late “a couple of times.” Other than that increase, he never raised the rent in the twelve years that Badeaux occupied the property.
Savoie testified that his monthly mortgage note on the property at the time he rented it was $511.00. He further stated that the lease agreement between he and Badeaux provided for an option to buy for the first year only, and after it was strictly a lease. He agreed that this one year limitation was not present on the document, but stated that he had discussed those terms with Badeaux. He admitted that he had several discussions with Ba-deaux concerning the purchase of the property. He further admitted that he had seen the notation “house note” on the payments, but considered that was a notation for rent. His intention on the written language was that it was a notation that his mortgage on the property would be paid in October of 2006, and that should Badeaux want to purchase the property at that time, it would cost no more than $4,000.00. Savoie testified that he notified Badeaux that he was going to sell the property via telephone, and that Badeaux indicated that he did not like the idea because they had an agreement to rent, and that Badeaux never stated that he thought he was purchasing the property. However, in his deposition of April 5, 2006, Savoie stated that “... he wasn’t pleased that I was going to sell the property and he assumed that we had an agreement for him to purchase it the whole time.”
In this appeal, Savoie contends that the trial court erred in finding that the agreement was a lease with an option to purchase. Badeaux argues that the trial court correctly found that the agreement contained an option to buy, but argues that the award of damages was erroneous.
| (¡Initially we note, as did the trial judge, that it is undisputed that Savoie provided all of the language in the agreement. Accordingly, any ambiguous language is to be interpreted against him, and in favor of the other party, Badeaux.
LSA-C.C. art. 2620 sets forth the requirements for such an agreement:
An option to buy, or an option to sell, is a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time.
An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
The trial judge evaluated the evidence presented and first found that the “thing” contemplated in the agreement was the mobile home and lot located at 124 Julia Street. He further found that Savoie gave Badeaux until October, 2006 to exercise his option to purchase.
The court also found that the parties reached an agreement as to the price for *1130 purchase, that being monthly payments of $575.00 (with a monthly discount of $25.00 for timely payments) from August 1, 1993 to October 2006, and an additional payment of $4000.00 in October, 2006. If the option had reached its term, applying the $25.00 on time discount to each payment and discounting the $25.00 increase for property taxes, the total amount paid would have been $81,950.00. After adding the $4000.00 lump sum due in October of 2006, the total purchase price was $85,950.00.
Finally, the court found that the agreement met a formality requirement for a sale of immovable property, namely an act under private signature.
After review of the record, we cannot say that the trial court erred in its findings, and thus we find that the trial court did not err in finding that the lessee agreement between the parties contained an option to purchase, and that Mr. Savoie breached that contract by selling the property to the Comadelles.
|7Badeaux’s appeal challenges the award of damages given by the trial court. It is his contention that the trial court erred in giving credit for the fair rental value of the property and also in giving credit for the improvements made by Sa-voie, which were improvements incurred in connection with the maintenance of the property by the property owner. Badeaux did not become the property owner, and therefore should not be assessed with the cost of the improvements as a “penalty.”
We find no error in the trial court’s ruling awarding Savoie a credit for the fair rental value of the property.
We do find that the trial court erred in granting credit for the cost of replacing the roof and air conditioning system. We agree with Mr. Badeaux’s assertion that these are expenses associated with the ownership of the property, and he never acquired that ownership. Furthermore, the lease agreement states that “If the residence is damaged beyond normal wear and tear or due to direct action or neglect on the part of the Lessee, Lessee shall be responsible for the costs of the repair.” There was no evidence offered to show that the roof and air conditioner were replaced because of damage beyond normal wear and tear, or that Badeaux and/or Main either caused the damage or allowed it to happen due to neglect. Accordingly, we find that the trial court erred in granting to Mr. Savoie a credit of $9,000.00 ($6,000.00 for roof replacement and $3,000.00 for air conditioner replacement).
For the above discussed reasons, the judgment of the trial court is amended to increase the award to plaintiff, Barry Ba-deaux, from $19,200.00 to $28,200.00. In all other respects, the judgment of the trial court is affirmed. All costs are assessed against defendant/appellant.

AMENDED AND AFFIRMED.